UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JESSIE J. MORAN, | 3:12-cv-00492-LRH-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| CHIEF OF POLICE SPARKS, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Defendants' Motion for Summary Judgment. (ECF No. 42.)[1]

After a thorough review, the court recommends that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections, submitted an application for leave to proceed in forma pauperis and proposed pro se complaint on September 13, 2012. (ECF Nos. 1, 1-1, Compl. filed as ECF No. 4.) On January 28, 2013, the court issued an order screening the complaint pursuant to 28 U.S.C. § 1915A. (ECF No. 3.)

The complaint alleges that on April 7, 2012, Plaintiff was arrested by defendant Sparks Police Department Officers Keller, Ginchereau, Ahdunko, Cleveland, and Hopkins. He contends that these defendants beat him so severely that his neck was broken and he was hospitalized for reconstructive surgery. (*Id.* at 4, 6.) He then alleges that he absconded from the hospital, and upon recapture, the same officers beat him severely again. (*Id.*) The complaint also names Lieutenant Krall and the chief of police. (*Id.* at 2-3.)

---

[1] Refers to court's Electronic Case Filing number.

1    In Count I, he alleges that the chief of police and Lieutenant Krall have policies that

2  encourage officers to use excessive force and that they have failed to train the officers on the use

3  of force. (ECF No. 4 at 5.) The court allowed Plaintiff to proceed with his claim in Count I that

4  some official policy, custom or failure to train encouraged officers to use excessive force against

5  Lieutenant Krall and the chief of police in their official capacities. (ECF No. 3 at 2-3.)

6    Plaintiff was allowed to proceed with his excessive force claim in Count II against the

7  arresting officers, defendants Keller, Ginchereau, Ahdunko, Cleveland, and Hopkins. (*Id*. at 3.)

8  Defendants eventually filed an answer. (ECF No. 37.) The court then issued a scheduling order,

9  setting the discovery deadline as September 23, 2014. (ECF No. 38.)

10    Defendants filed their motion for summary judgment on October 23, 2014. (ECF No. 42.)

11  No action was taken by Plaintiff with respect to the motion, except to submit a letter asking

12  about the status of his case on April 13, 2015. (ECF No. 44.) Plaintiff had failed to apprise the

13  court of his new address when he moved to another prison facility, and the court observed

14  Plaintiff may not have been served with the *Klingele* order at the correct address. (*See* Minutes at

15  ECF No. 46 at 2.) The court directed the clerk to re-serve the *Klingele* order on Plaintiff, and

16  Plaintiff was ordered to abide by the time limits for responding to Defendants motion for

17  summary judgment as set forth in the *Klingele* order. (*Id*.)

18    On May 19, 2015, Plaintiff filed a motion requesting an extension of time until

19  July 12, 2015, to respond to Defendants' motion for summary judgment. (ECF No. 50.) The

20  court granted his request, and advised him the deadline would not be extended. (ECF No. 52.)

21    On August 7, 2015, Plaintiff filed a second motion for an extension of time to respond to

22  Defendants' motion for summary judgment until August 31, 2015. (ECF No. 55.) Despite its

23  untimeliness, the court granted Plaintiff another opportunity to submit his response, and he was

24  again advised the deadline would not be extended further. (ECF No. 57.)

25    On August 27, 2015, Plaintiff filed his third request for an extension of time to respond to

26  Defendants' motion. (ECF No. 58.) The court gave Plaintiff "one last opportunity" to submit his

27  response, and gave him up to September 15, 2015 to do so. (ECF No. 59.)

28

1    On September 14, 2015, one day before his response was due to be filed, Plaintiff

2    submitted a document titled, "Motion to Oppose Summary Judgment." (ECF No. 63.) He

3    indicated that he would be filing a motion to reconsider assigning him legal counsel, and seeking

4    an extension of time until December 15, 2015, to file his response so that his counsel could

5    perform adequate research. (*Id*. at 1.) The document also contains several sentences that might be

6    interpreted as a response to Defendants' motion, and the clerk construed the document as such in

7    docketing. This is a stretch as the document merely states that Plaintiff reviewed some of the

8    case law cited by Defendants and includes a conclusory and otherwise unsupported statement

9    that officers engage in questionable behavior because they rely on "badge heavy instructors." (*Id*.

10   at 2.) It also conveys Plaintiff's general sentiment that "training by the wrong person can be fatal

11   and harmful to society." (*Id*. at 2.) The document contains no specific factual assertions that

12   could be construed as presenting a genuine dispute of material fact in response to Defendants'

13   motion. Therefore, while the clerk construed Plaintiff's filing as a "response" to Defendants'

14   motion, the court's analysis will contain no further reference to the document because its

15   contents are not germane to Defendants' motion.

16   On the same day, he filed a motion seeking the extension of time referenced above, until

17   December 15, 2015, to file his response. (ECF No. 64.) The court denied his motion, as Plaintiff

18   has been given more than ample opportunity to prepare his response and did not come forward

19   with any credible explanation as to why he was unable to do so up to this point. (ECF No. 66.)

20   It is also worth mentioning that Plaintiff has filed numerous motions to appoint counsel,

21   none of which had any merit, and were denied by the court. (*See* ECF Nos. 27, 29, 48, 53, 60, 62,

22   65, 66.)

23   The court will now turn to its analysis of Defendants' motion for summary judgment

24   which argues there is no evidence that the Defendants utilized excessive force in either the

25   April 7, 2012, or April 16, 2012 arrests. (ECF No. 42.)

26   ## II. LEGAL STANDARD

27   "The purpose of summary judgment is to avoid unnecessary trials when there is no

28   dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

1   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

2   judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

3   525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

4   (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

5   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

6   Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at

7   issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

8   250 (1986).

9   > A party asserting that a fact cannot be or is genuinely disputed must support the
    > assertion by:

10  > (A) citing to particular parts of materials in the record, including depositions,
    > documents, electronically stored information, affidavits or declarations,

11  > stipulations (including those made for purposes of the motion only), admissions,
    > interrogatory answers, or other materials; or

12  > (B) showing that the materials cited do not establish the absence or presence of a
    > genuine dispute, or that an adverse party cannot produce admissible evidence to

13  > support the fact.

14  Fed. R. Civ. P. 56(c)(1)(A), (B).

15      If a party relies on an affidavit or declaration to support or oppose a motion, it "must be

16  made on personal knowledge, set out facts that would be admissible in evidence, and show that

17  the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

18      In evaluating whether or not summary judgment is appropriate, three steps are necessary:

19  (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as

20  to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

21  *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

22  the outcome of the suit under the governing law will properly preclude the entry of summary

23  judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

24      In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

25  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

26  come forward with evidence which would entitle it to a directed verdict if the evidence went

27  uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

28  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go  beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See*

1   *Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all

2   justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is

3   merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-

4   50 (citations omitted).

5        While Plaintiff has essentially failed to oppose the motion, the court may not "grant

6   summary judgment 'by default[.]'" *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013)

7   (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). The court must still ascertain

8   that the moving party has met its burden under Rule 56; however, "[i]f there is a failure to

9   respond, the Rule 'authorizes the court to consider a fact as undisputed.'" *Id*.

10       **III. DISCUSSION**

11  **A. Standard**

12       The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

13  houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV.

14       Claims of excessive force during an arrest or other seizure of a free citizen are evaluated

15  under the Fourth Amendment and apply an "objective reasonableness" standard. *Graham v.*

16  *Connor*, 490 U.S. 386, 395 (1989) (internal quotation marks omitted); *see also Smith v. City of*

17  *Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc) ("A Fourth Amendment claim of excessive

18  force is analyzed under the framework outlined by the Supreme Court in *Graham v. Connor*.").

19  This analysis "requires a careful balancing of 'the nature and quality of the intrusion on the

20  individual's Fourth Amendment interests' against the countervailing governmental interests at

21  stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). The question is

22  "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

23  confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (citations

24  omitted). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest

25  ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to

26  effect it." *Id*. at 396 (citation omitted).

27       The objective reasonableness inquiry "requires careful attention to the facts and

28  circumstances of each particular case, including the severity of the crime at issue, whether the

1  suspect poses an immediate threat to the safety of the officers or others, and whether he is

2  actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted).

3  These factors are not exhaustive, and courts are "to examine the totality of the circumstances and

4  consider 'whatever specific factors may be appropriate in a particular case[.]'" *Bryan v.*

5  *MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876

6  (9th Cir. 1994)). Courts conduct their evaluation of reasonableness "from the perspective of a

7  reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490

8  U.S. at 396 (citation omitted).

9          "'Not every push or shove, even if it may later seem unnecessary in the peace of a

10  judge's chambers,' ... violates the Fourth Amendment." *Id.* (citation omitted). "The calculus of

11  reasonableness must embody allowance for the fact that police officers are often forced to make

12  split-second judgments−in circumstances that are tense, uncertain, and rapidly evolving−about

13  the amount of force that is necessary in a particular situation." *Id.* at 396-97.

14  **B. Analysis**

15          Plaintiff did not substantively respond to Defendants' motion; therefore, the court takes

16  the facts presented by Defendants as undisputed. *See Heinemann*, 731 F.3d at 917. The court will

17  now assess whether, in light of these facts, Defendants are entitled to summary judgment.

18          First, the court will assess the type and amount of force used. Defendants have submitted

19  evidence, to which Plaintiff has failed to raise a genuine dispute of material fact, establishing that

20  at 4:00 a.m. on April 7, 2012, a vehicle was reported as stolen from an apartment complex, and

21  approximately one half hour later, defendant Officer Keller observed this vehicle near Pyramid

22  Highway and I Street in Sparks, Nevada. (Keller Aff., ECF No. 42-1 at 3 ¶¶ 6-7.) Officer Keller

23  followed the vehicle until other officers arrived to the area. (*Id.* ¶ 8.) Officer Ginchereau, Officer

24  Hopkins, and Sergeant Cleveland responded to assist Officer Keller. (Ginchereau Aff., ECF No.

25  42-1 at 9 ¶ 6; Hopkins Aff., ECF No. 42-1 at 46 ¶ 5; Cleveland Aff., ECF No. 42-1 at 67 ¶ 7.)

26  Officer Keller turned on his emergency lights in an attempt to get Plaintiff to pull over, but the

27  driver sped away, reaching speeds of ninety-five miles per hour, nearly striking parked cars,

28  weaving in and out of lanes, and failing to heed stop signs. (Keller Aff., ECF No. 42-1 at 3 ¶¶ 8-

10.) The officers attempted to chase the vehicle, however, they lost sight of the vehicle when they were forced to slow for a citizen backing out of his driveway. (Keller Aff., ECF No. 42-1 at 3 ¶¶ 11-12; Ginchereau Aff., ECF No. 42-1 at 9 ¶ 8.)

Shortly thereafter, defendant Officer Ginchereau located the stolen vehicle parked in the driveway of a residence on La Grange Court, but the vehicle was unoccupied. (Keller Aff., ECF No.42-1 at 3 ¶ 12; Ginchereau Aff., ECF No. 42-1 at 9 ¶ 9.) Other officers in the area set up a perimeter and Officer Kelly broadcast a description of the driver. (Keller Aff., ECF No. 42-1 at 4 ¶ 13; Ahdunko Aff., ECF No. 42-1 at 14 ¶ 7.)  Minutes later, defendant Officer Ahdunko advised the officers he had located a man matching the description of the suspect in the backyard of the residence. (Keller Aff., ECF No. 42-1 at 4 ¶ 14; Ginchereau Aff., ECF No. 42-1 at 9 ¶ 11; Ahdunko Aff., ECF No. 42-1 at 14 ¶ 7; Hopkins Aff., ECF No. 42-1 at 46 ¶ 6.) Plaintiff initially provided the officers with a false name, but was eventually identified as Jessie J. Moran. (Keller Aff., ECF No. 42-1 at 4 ¶ 14; Ahdunko Aff., ECF No. 42-1 at 14 ¶ 8; Hopkins Aff., ECF No. 42-1 at 46 ¶ 6.)  Officer Cleveland's assistance once Plaintiff was located was limited to providing cover to Officer Keller while effectuating Plaintiff's arrest. (Cleveland Aff., ECF No. 42-1 at 67 ¶ 8.)

Plaintiff complained to officers that he had "broken his neck falling off a fence." (Ginchereau Aff., ECF No.42-1 at 9 ¶ 12; Ahdunko Aff., ECF No. 42-1 at 14 ¶ 10; Hopkins Aff., ECF No. 42-1 at 46 ¶ 6.) Paramedics were requested. (Keller Aff., ECF No.# 42-1 at 4 ¶ 15; Hopkins Aff., ECF No. 42-1 at 46 ¶ 7.) The officers searched Plaintiff and confiscated two knives. (Keller Aff., ECF No. 42-1 at 4 ¶ 16; Ginchereau Aff., ECF No. 42-1 at 9 ¶ 13; Ahdunko Aff., ECF No.42-1 at 14 ¶ 9.) Plaintiff was helped into a seated position, then was helped to his feet and was handcuffed. (Keller Aff., ECF No.42-1 at 4 ¶ 17; Ginchereau Aff., ECF No. 42-1 at 9 ¶ 14; Ahdunko Aff., ECF No. 42-1 at 14 ¶ 11.) He was permitted to lean against the police car until the paramedics arrived. (Keller Aff., ECF No. 42-1 at 4 ¶ 17; Ginchereau Aff., ECF No. 42-1 at 10 ¶ 15; Ahdunko Aff., ECF No. 42-1 at 14 ¶ 12.) When the paramedics arrived, Officer Ginchereau removed Plaintiff's handcuffs from his back and placed them in the front so Plaintiff could be placed in full C-spine precaution. (Ginchereau Aff., ECF No.42-1 at 10 ¶ 16; Ahdunko

Aff., ECF No. 42-1 at 14 ¶ 13.) Officer Hopkins followed behind the paramedics to keep custody of Plaintiff who had been arrested. (Hopkins Aff., ECF No. 42-1 at 46 ¶ 8.)

The paramedics' records reflect that Plaintiff displayed full range of motion in his neck. (REMSA Report, ECF No. 42-1 at 18.) Plaintiff repeated his complaint to the paramedics that he hurt his neck falling off the fence when he was running from the police. (*Id.*) He was strapped to a backboard and treated with full cervical spine precautions. (*Id.*) He showed no signs of trauma on his head, neck or back. (*Id.*)  No lacerations were noted to the head, face, neck, chest, abdomen, pelvis, back or extremities. (*Id.* at 20.) He was able to move all of his extremities. (*Id.* at 19.) He was transported by the paramedics to Renown Regional Medical Center. (*Id.*)

Once he arrived at the hospital, he remained in cervical immobilization. (Renown Medical Records, ECF No. 42-1 at 36.) Consistent with the description of events he had given to the officers and to the paramedics, Plaintiff explained to the personnel at Renown that he injured his neck when he fell on his head while jumping a fence when he was evading the officers. (*Id.* at 36, 38, 41.) He denied loss of consciousness, which was consistent with his examination. (*Id.* at 35, 36, 41.) He did have some facial contusions, but no obvious signs of facial trauma. (*Id.* at 36, 42.) Renown physicians determined Plaintiff fractured the sixth and seventh cervical vertebrae in his neck, which would require surgical repair. (*Id.* at 34-35, 37-38, 42.) Plaintiff underwent surgery on April 10, 2012, and left the hospital against medical advice on April 15, 2012. (*Id.* at 35, 38-39.)

At 2:30 a.m. on April 16, 2012, Officer Keller received an anonymous tip that Plaintiff was hiding from police at the Golden Apartments in Reno, Nevada. (Keller Aff., ECF No. 42-1 at 5 ¶ 27; Hopkins Aff., ECF No. 42-1 at 46 ¶ 11.) Officer Keller asked Officers Ahdunko and Ginchereau to respond to the apartment. (Keller Aff., ECF No. 42-1 at 5 ¶ 29; Ginchereau Aff., ECF No. 42-1 at 10 ¶ 18; Ahdunko Aff., ECF No. 42-1 at 14 ¶ 716.) Upon arriving at the apartment, Officers Ahdunko and Ginchereau heard a man and woman speaking inside the residence, and believed the male voice to be Plaintiff's. (Ginchereau Aff. Decl., ECF No. 42-1 at 10 ¶ 19; Ahdunko Aff., ECF No. 42-1 at 14 ¶ 17.) Officer Keller arrived with Officer Hopkins at

3:00 a.m., and knocked on the door loudly several times for approximately twenty minutes, to no avail. (Keller Aff., ECF No. 42-1 at 6 ¶ 32; Ginchereau Aff., ECF No. 42-1 at10 ¶¶ 20-21; Ahdunko Aff., ECF No. 42-1 at 15 ¶¶ 18-19; Hopkins Aff., ECF No. 42-1 at 46 ¶¶ 12-13.) Plaintiff subsequently opened the door and walked out. (Keller Aff., ECF No. 42-1 at 6 ¶ 33; Ginchereau Aff., ECF No. 42-1 at 10 ¶ 21; Hopkins Aff., ECF No. 42-1 at 46 ¶ 13.) Officer Keller, who was standing approximately five feet from the door, grabbed Plaintiff as he exited the apartment, placed him in handcuffs, told him he was under arrest and escorted him to a police vehicle, without incident. (Keller Aff., ECF No. 42-1 at 6 ¶¶ 33-34; Ginchereau Aff., ECF No. 42-1 at10 ¶ 22; Hopkins Aff., ECF No. 42-1 at 46 ¶¶ 14-15.) Officer Keller and Officer Hopkins transported Plaintiff to the Washoe County Jail without incident. (Keller Aff., ECF No. 42-1 at 6 ¶ 35.) Plaintiff was booked on charges of grand larceny of a motor vehicle, possession of a stolen motor vehicle, eluding police, and possession of a dangerous weapon. (Keller Aff., ECF No. 42-1 at 6 ¶ 35; ECF No. 42-1 at 49 ¶ 2; ECF No. 42-1 at 52-53.)

There is no evidence that the defendant officers utilized an unreasonable amount of force in effectuating Plaintiff's arrest on either April 7, 2012 or April 16, 2012. Instead, the evidence demonstrates that Plaintiff was taken into custody each time without incident. He consistently admitted to the officers, paramedics and physicians that his injuries were due to a fall he sustained while trying to climb over a fence to evade the officers.

Defendants provide the declaration and report of expert witness, Robert H. Odell, Jr., M.D., Ph.D., who reviewed Plaintiff's medical records as well as the complaint and police reports from the incidents, and opined that Plaintiff's allegations that he was beaten by police causing his neck injury and causing him to lose consciousness are completely unfounded. (ECF No. 42-1 at 55-57 ¶¶ 6-7, 61.) Dr. Odell points out that there was no evidence of head trauma except for abrasions to the face which were consistent with Plaintiff's original story that he did a "head plant" after falling from the fence. (*Id.*) Moreover, "[t]he forces associated with a beating around the neck (and torso) are not consistent with the forces required to cause fractures of [the] magnitude" Plaintiff suffered in his neck. (*Id.*) "[A] high speed injury (and thus high force) is required to cause the biomechanical trauma noted on CT and MRI." (*Id.*)

1    In sum, Plaintiff's claims that he was beaten by the officers to the point of

2    unconsciousness causing his neck injuries which required surgery are completely unsupported by

3    the evidence. Instead, the evidence supports Defendants' assertion that at all times they used a

4    reasonable amount of force to place Plaintiff into handcuffs and into custody without incident.

5    Second, the court will address the severity of the crime at issue: grand larceny of a

6    vehicle, possession of a stolen motor vehicle, eluding police and possession of dangerous

7    weapons.  Plaintiff stole a vehicle and then led officers on a high-speed chase through residential

8    streets, at times exceeding ninety miles per hour, weaving in and out of lanes and disregarding

9    traffic signals, presenting a significant danger to the officers and members of the public. Two

10   knives, one of which was a switchblade were confiscated from Plaintiff during his first arrest. He

11   then absconded from the hospital and continued his attempts to evade police. This factor

12   undoubtedly weighs in favor of the Defendants.

13   Third, the court will consider whether Plaintiff posed an immediate threat to the safety of

14   the deputies at the time the challenged conduct took place. This is the most important factor.

15   *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc). As indicated, Plaintiff led

16   the officers on a high speed chase through city and residential roads, at times exceeding speeds

17   of ninety miles per hour, weaving in and out of lanes, and disregarding traffic signals. He

18   subsequently abandoned the vehicle to evade the officers on foot, where he was ultimately found

19   in the backyard of a private residence. His conduct unquestionably posed an immediate threat of

20   safety to the officers. As a result, this factor likewise weighs in Defendants' favor.

21   Finally, the court considers whether Plaintiff was actively resisting arrest or attempting to

22   evade arrest by flight. It is undisputed that Plaintiff led the officers on a high-speed chase and

23   subsequently abandoned the stolen vehicle to try to evade the officers on foot. As such, this final

24   factor weighs in Defendants' favor.

25   Given these undisputed facts, the court concludes that Defendants' use of force was

26   objectively reasonable under the circumstances. Accordingly, the court recommends that

27   Defendants' motion for summary judgment should be granted. In light of the court's conclusion,

28   it need not reach Defendants' qualified immunity or municipal liability arguments.

# IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING**

Defendants' motion for summary judgment (ECF No. 42).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: September 18, 2015.

William G. Cobb

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE